Agency and that is 5-18-0028, if the parties are ready. Thank you, Your Honor. May it please the court. Good morning, Justices. Mr. Blighter. My name is Chad Sullivan. I'm attorney for the appellant Westport Auto Sales, Paul Yocum in this case. And we are here today on an appeal of the granting of two motions to dismiss at the trial court. There was a motion to dismiss under 6-15 on counts 1 and 2. A 2-6-19 motion on our count 3 for unjust enrichment. And the basis of all of those claims involves my client who is an auto dealership. His auto dealership suffered a flood in 2008 that pretty much wiped out his business. The county, through all of its board members at some point, came to Mr. Yocum, the principal of Westport Auto Sales and said, please rebuild your business. We need you here. You're our largest taxpayer. We'll do whatever we can to help you rebuild in our county. More specifically, they promised to enter the NFIP program, which is the National Flood Program. This was important because it allowed Mr. Yocum to get financing to do his rebuild and it allowed him to obtain flood insurance for his company. These promises as reflected in the record and analyzed in our complaint were made by numerous board members before entering the ordinance at the meeting where they entered the ordinance and even after they entered the ordinance saying, we've entered this for you so you will rebuild in our county. We submit the dismissal of all of these claims was improper for multiple reasons. Regarding count 1, which was for breach of contract implied in fact, the first reason the court gave for dismissal of that count was they applied a special duty standard. They said that plaintiffs did not meet its duty to show a special duty by the county to my clients. We submitted in our briefing that no such special duty applies in this case. We put an extended quote from the PFC, Jeffrey Morris, the case for that exact argument was specifically rebutted and said there is no special duty required in these types of breach of contract implied in law. Moreover, even if there was a special duty in the law in this type of case, we have alleged facts through the course of conduct about the specific promises, the interaction between the board members and my clients that a finder of the fact could find that that special duty was created by the interaction between our clients. Again, this was dismissed on a 615 motion to dismiss. We submit that even if there was a special duty, facts have been alleged that the fact finder should determine whether that duty arises in this case. The second thing the trial court did is it improperly applied a special relationship requirement. It said that there was no special relationship between the board and Westport and therefore as a matter of law, there could be no claim for breach of contract implied in law. Again, we find no foundation in LOA law for the special relationship on this type of claim. And again, even if there were such a requirement, plaintiffs have sufficiently put facts in its complaint that that issue should be determined by a fact finder, not on a 615 motion to dismiss. The third reason in the trial court used as a basis for its dismissal was it said there was no alleged benefit to the county in this case. We submit that's inaccurate. We submitted in paragraphs 12, 25, and 26, that there was no benefit to the county in this case. In paragraph 21, paragraph G of our request for remedies, that taxes were paid to the county and that those taxes were a direct benefit to the county. Moreover, I think Illinois case law is clear on this, that the taxes paid are a benefit to a municipality. We cite to the Woodfield Lanes case, the site's improvements to the village, thereby increasing the village's tax base. We agree with the trial court's conclusion that the village received a benefit when plaintiff constructed the sewer. Moreover, the Supreme Court case of Raintree Homes involved an impact fee. The plaintiff in that case had paid an impact fee as part of a permit process. And the Supreme Court stated, we believe that an impact fee is not a tax. The similarities between the payment of a tax and the payment of an impact fee are sufficient to render instructive tax cases addressing the issue of accrual of an action. So in that case, the Supreme Court is saying basically obviously taxes are a payment of benefit and we find an impact fee analogous to a tax and therefore we find a benefit in this case. The other thing that the trial court did regarding the tax issue is they said, well, the ordinance wasn't in place that long, so there wasn't a sufficient benefit because the ordinance wasn't in place very long. We respectfully submit that one, any evaluation of sufficiency of allegations is improper on a 2615 motion and so that analysis almost per se is improper basis for the ruling on the motion to dismiss. And moreover, even if you did look at the sufficiency of the benefit, how long the ordinance was in place, it was in place long enough to do what the county wanted, which was have Westport rebuild their business. The ordinance was in place for 10 months approximately. In that time, my client spent approximately half a million dollars in rebuilding his business, which basically anchored him into the county in which he paid taxes for two years before he ultimately moved to another location. So again, we submit that the reasoning of benefit not being sufficient or alleged was an improper basis for the trial court's dismissal. Let me stop for a second. I know that in part of your argument in this case that you cited to a Rule 23 case, Jeffrey, was it? P.S.C. Jeffrey Morris. Jeffrey Morris. Yes, sir. And I know that the other side pointed that out in their brief and I'm a little confused as to your concern. In your reply brief, you said that there's no spec with regard to the special duty requirement that defendants solely apply the plaintiff's argument that the trial court improperly applied the requirement of the special duty as a basis for its finding is that the P.S.C. Jeffrey Morris case is an unpublished opinion. Then you go on to say defendant does nothing to rebut the cogent reasoning set forth in that case. Do you have a case that's not against the appellate court rules of citing a Rule 23 case to replace that case with? Well, the I mean, once it's brought up that it's a Rule 23, I don't think that the other side has a duty to do much with regard to arguing against that case since it's an unpublished case. A couple of things, Your Honor. I guess initially they don't cite to a case that creates the special duty. So I'd say the initial burn is on them to show that that's a correct statement of law and they did not provide any such citations to say that is correct Illinois law. And in direct response to your question, the P.S.C. Jeffrey Morris case cites to the Millburn case. And you cited to that? Yeah. In our briefing, I think we tried to reply briefly. I believe we pointed both of those out. I think there was the Millburn case and American ambassador. Yes. The the other argument we have on count one is the equitable stoppable argument that at this point, the county is stopped from denying the validity of the agreement between the county and Westport. That agreement being one of the F.I.P. program. If you rebuild, we we've had a number of equitable stop all cases in that argument that that simply they cannot go back on their agreement. That they are equitably stopped from saying that there is not agreement between the parties. Accordingly, we submit that we have sufficiently alleged a counter breach of contract implied in fact and that the trial court's dismissal of that claim was in error. Counsel, so this agreement is between individual board members and your client. Nothing in writing. This is just conversations about whether or not the county is willing to pass the ordinance or not. I guess I would disagree with that, Your Honor, because you have to look at it as a whole of what happened here. It was all of the board members saying to my client, we'll enter this F.I.P. program if you'll rebuild. And then they entered into that ordinance. And he lived up to his part of the agreement and started to rebuild. Those things together, those promises, those assurances that we'll enter the program so you can get financing, so you can get insurance, and therefore you can rebuild and pay his taxes, combined with the actual ordinance, them kind of doing what they initially said they would do, constitutes the agreement. So not just what the board members said by themselves, but those actions taken together. Mr. Yocum testified, correct me if I'm wrong, that he in fact did not believe that the board passed the resolution to join the F.I.P. specifically to keep Westport's business alive. Is that correct? I don't believe that's correct, Your Honor. I'm not sure where... C-906? And he did in fact acknowledge that no resolution ordinance was passed specifically relating to his business. Well, I think he admitted that the words Westport Auto weren't in the ordinance. I'm not asking you to concede that there wasn't representations made to him that they were doing these things, oral representations made to him that they were doing these things to help keep his business, which provided such great tax base for the county, from leaving Lawrence County. I'm just saying that in terms of a written, anything that would memorialize it in writing, resolution ordinance, so forth and so on, nothing was done. And he acknowledged that. Yeah, he acknowledged that the ordinance that entered the F.I.P. program does not say we are entering the F.I.P. program for Westport Auto Sales. Obviously he believed that's why they were entering it, that's why he could rebuild, that's why he could invest the money, because they were entering it, and he would be able to rely upon the advantages of the NFIP program. And I know that's an issue that defendants bring up, that the ordinance doesn't specifically say Westport. But I think that's a dangerous precedent, if that's the case. An example I can give, in my hometown where I live, the city just said that if somebody would build a convention center, that they would contribute $15 million of tax money to the building of this convention center. They easily could have passed an ordinance that just says if someone builds a convention center at this address, we'll donate or we'll contribute $15 million of tax money. If that company then builds the convention center, and then the city said, well, we don't have $15 million anymore, so we're not going to give you that. Just saying because Doubletree Hotel wasn't named in the ordinance, I think is just a dangerous public policy precedent to set, because it's so ripe for abuse. I mean, it would be so easy for a draftsman just to make sure they never say somebody's name in an ordinance, if that's going to guarantee them immunity from any actions or promises that they make. How do you distinguish, I think one of the cases you cited, County of DuPage versus K-5? How do you distinguish that, whereas in that case, there was written evidence by letters written as to here, where it's basically, you know, they relied on the oral representations from a few of the board members, specifically, I believe, Gillespie, Emmons, and Curtis, but admits that there's nothing in writing to suggest that they were the reason that they entered into that NFIP? I don't think, and I haven't seen any argument that there, it's not a statute of frauds argument, I guess, is kind of how I analogize this. I don't know that there has to be something in writing as to the agreement, which is we enter the NFIP, you rebuild. I don't think that is a requirement that something in writing that specific. I mean, that's why these are breach of contracts implied in law or oral agreement contracts that we've alleged, as opposed to a written breach of contract. I do still contend, you know, that the agreement in some substance is both the oral presentations with the passing of the ordinance, but I don't believe there's any requirement that something has to be in writing that's specific to saying we board will enter the NFIP program if you west board will rebuild in our county. Regarding the tort immunity argument that the defendants set forth in the trial court relied on, we believe both the trial courts and defendants are really looking for an expansion of the Tort Immunity Act. We would raise that because the Tort Immunity Act is in derogation of common law, it must be strictly construed. We believe that the trial court and defendants are trying to take an expansive view. They rely on the Village of Bloomingdale to say, in the Village of Bloomingdale case, to say that no quasi-contract claim can ever be raised against a municipality. We've cited a number of cases that show a litany of cases, breach of contract applied in law cases or estoppel cases, that have been brought against municipalities. And I think the Supreme Court in Raintree also rebuts their argument. Raintree was decided after the Village of Bloomingdale. And they say, the Supreme Court says, because plaintiffs seek the refund of an impact fee and not damages, the Village's reliance on the Village of Bloomingdale is misplaced. While the Village correctly asserts the Village of Bloomingdale may have implicitly found the act applied to some non-tort actions, specifically it issued the case, such a ruling does not imply that the act applies to all non-tort actions against the government, including impact fee refund actions. So to the extent part of these claims is seeking restitution of the tax benefits, I think the Supreme Court makes it abundantly clear in Raintree that those actions can carry forth against a municipality. So I think at a bare minimum, the cases survive the motions to dismiss in order to seek restitution of the tax benefits, which we have alleged in the complaint. Finally... So you're asking for what, restitution or damages? Yes. You asked for both. Yes. In order to seek restitution, couldn't your client have to have had a loss? How can it seek a recovery of taxpayer's money that was not money that your client lost? Well, it paid the taxes. And I think it would be similar to the tax cases we cited earlier about Raintree and... So the client is trying to recover its real estate taxes as opposed to sales taxes? Yes, real estate taxes, basically any taxes that were paid directly to the county. Additional discovery will have to be, and again this was a motion to dismiss, so we may need additional discovery to put a fine point on what that number is. But there's no doubt the taxes were paid to the county. That was, the record reflects, they kept saying that's why we... If that wasn't as a loss, sales taxes weren't a loss to your client? No, proper, well... Because sales taxes are paid, it's just a pass-through on the sales tax. So how can your client seek restitution of sales taxes when they didn't lose anything when other people paid the sales taxes? I don't think they would be seeking restitution of sales taxes. I think it would be restitution for the taxes such as real estate taxes that are paid directly to the county. Okay, thank you. Yeah, no problem, thank you. We'll highlight just a couple of... I'll say it for you both. Yes, thank you. Thank you. Mr. Blyer, whenever you're ready. Thank you. Police court, Mr. Sullivan, my name's Joe Blyer. I'm here representing the county of Lawrence, Illinois, and we're here today asking this court to affirm Judge Hopkins' orders dismissing the plaintiff's, all three counts of the plaintiff's complaint. Your Honor, this is, from listening to the questions, reading the briefs, this is a case that can be easily decided in affirming Judge Hopkins' ruling. The facts are very simple. As set forth in the complaint, I realize that this is a hearing on a motion to dismiss, that we have to consider everything that the plaintiff alleges as true, and taking that into noble review whether or not the plaintiff's amended complaint seeks a cause of action. It's very important to accept the facts and how this case is distinguished by the cases that the plaintiff has cited here on the implied-in-fact, implied-in-law cases. I think some of the questions that were expressed here today, I say that considering all the cases that have been cited by the plaintiff in this case, considering the cases cited by the defendant, allowing a case to stand against an action by the county of Lawrence as the facts alleged in the complaint would be a case of first impression. There's not a case I know of, and being with this case for six or seven years, where an action by the county board that makes no mention of Westport's auto sales about moving into the NFIP or moving out of NFIP, which should be allowed to have a cause of action against the county. There's allegations in the complaint that certain board members made representations, saying, we like your business. We assume those facts are always true in this particular case. But the fact is that the county board does not act by individual board members. The analogy, you've got to count to four. That's what you need, four votes to get anything passed. Any allegations or any individual representations that does not support a cause of action against the board, the county board, when there is nothing in the ordinance that specifically adopts or favors Westport Auto. Another thing about this distinguishing about this particular action, the action taken by the county of Lawrence brought the whole county into the National Flood Insurance Program. It didn't specifically carve out this piece of property. It didn't carve out auto dealerships. It didn't carve out anything specific about Westport Auto sales. It was a decision by the county to include the whole county in this program, including Westport Auto, since it was part of the county. Is there anything in the record that would indicate how much it cost the county to enter into this NFIP program? No, Your Honor. There's nothing in the record that I know of that it cost. In the depositions, I think the county board chairman at the time said it was the most contentious decision, most contentious board members' hearings they had when they decided to go in it and when they decided to go out of it. It caused a lot of strife going in and out for the entire county. But there's nothing in the record as to what it actually cost the county to enter into the program or to when they decided to come out of the program. And, Your Honor, that's another thing that's very specific about that. Just because the county is in NFIP or out of NFIP, that doesn't affect Westport Autos directly from doing business in the county. It only has to do with something about how they apply and apply for flood insurance, whether or not you're in or out of this program. So, theoretically, whether the county is in or out of the program has no direct bearing on the operation of Westport Auto sales in the county. Well, that's a possible... I can buy that for a general statement. However, the facts of this case, it's a little disingenuous, I think, to suggest the county had never been part of the NFIP prior to that. Correct. That's correct, Your Honor. They had a flood in 2008. Yes. And one of their largest tax-based companies, Westport, starts to leave the county. That is correct. As you pointed out, you know, taking as true what's in the complaint, several board members approach the dealership owners and say, We really want you back in this county. We need the tax base. What's it going to take? It's clear that the county board members knew that Westport was leaving because they couldn't afford the flood insurance. NFIP made the flood insurance $8,000 a year. Without it, $36,000 a year. There's testimony in the complaint that, you know, the owners of Westport basically liquidated all of their own personal assets in order to, once they knew that NFIP was going to come back, in order to reestablish the business in Lawrence County. And after spending a half a million dollars in doing so, they're being trapped by spending that much money already at Lawrence County. NFIP goes away. The insurance goes from $8,000 to $36,000, which is more than they can afford. Now they can't operate as they intended. NFIP was passed, it seems, based on what I've seen in the record and on the briefs and so forth and so on. That NFIP was passed in order to make it possible, at least, for Westport to consider coming back to Lawrence. Whether it was stated in the ordinance, whether it was stated in anything that was passed, the conversations that were had seems to me that that was the driving force behind the county passing that was for Westport. Was there another business, was there another entity that was greatly benefited by the NFIP for that short period of time that you're aware of? There were a lot of businesses that were affected for being in the program, and that was one of the reasons why they came out of it. If we can get into that part of it, the whole west side of the county is largely agricultural. It's a lot of large farms, and the NFIP program, when they got in it, was causing turmoil and trouble with a lot of property in and around the county on the west side of the property, dealing with farmers having to make improvements, whether or not they had to raise different levels of property to do improvements. There was numerous homes on the west side of the property that had mortgages that were losing their mortgages because once the county is NFIP, mortgage lenders have to do other things regarding mortgages with flood insurance programs. There was just all kinds, a storm of problems on the west side of the county, where Westport is located, that was brought to the attention of the county, after they came into the program, of all the turmoil and financial strife that was going on as a result of the county voting in this program. And that is why they came out of it within a relatively short period of time, because of all the turmoil of all the voters and everybody on the west side and the south side. I learned in this case that Orange County, nearly 50% of the county is in a flood plain because there are three rivers that run through the county and cause a considerable amount of difficulty and problems with water. But this program, as I was responding to Justice Moore's question, was the county board chairman, in his 30 years of being on the county board, whether to go in and out of it was the biggest uproar. They even had police coming to the meetings when they were having public meetings on in and out of this program. And that is why you read of all these cases, implied in fact, implied in law, implied in equity, that it has to be a decision by the county board and there was nothing about this Westport. And to the flip side of that, Your Honor, to that question is, if this case would allow a stand, allow a legislature body to make a decision for the good of the county to go in a program and a legislature decision for the good of the county to come out of the program, what if they would have stayed in it, then we might have been here with a lawsuit with farmers and everybody else for not going out of it. And that is really the reason why that there is no other case in the state of Illinois that I could find that would hold a county liable for this action by a legislature action. If the county was afraid that they were going to get sued in or out, counties make decisions all the time that affect businesses. Sure, the difference that I see in that line of reasoning is that the farmland wasn't enticed to stay in the county or come back to the county by going into the program. The houses were. The homes were. The business was. Well, there is no testimony. There is nothing to suggest that anybody was moving out of the county and then came back residentially because of the NFIP. I am just saying that this business, it seems, made its decision based on the representations of the board members that we can help you get that insurance cost down so that you can get the flood insurance that you are looking for. Well, Kerry, that is that further reasoning, Your Honor. Then if all these board members made representations to him that we are going to enter this program for the purpose of you or for Westport and then at a board meeting, they don't vote in the NFIP program. They decide not to vote in it. The flip side would be then would Westport then be allowed to sue the county board as a whole because, hey, you all told me individually that you were going to vote for this and I decided to spend this money, but then at the program you didn't vote. So, I mean, that is why the purpose of this legislature, basic legislature of unity, is getting to a board because the board has the operation of the entire county to consider, not just one individual. And that is also how this case is distinguished by the cases that cited in the plaintiff's brief regarding implied in fact, implied in law. All the cases, Your Honor, deal with mostly zoning issues or building permits where the courts have found that there was a specific act given to one individual, the plaintiff in most cases, where either a zoning was made for this one particular property or a building permit was given to a particular owner to allow him, once that owner got that building permit, he started, he or she started improving it and then they pulled the building permit. And that is what's distinguished by this particular case is that it was an effort by the, it affected the entire county. And I can appreciate the court's questions about how this, the court's concern about enticing one individual, but, Your Honor, that's the, you know, the law is that there shouldn't be allowed that the county board individual people say, yes, we'll vote you in, we all want it in. And since we're on the taking those allegations as facts, it's true. I'm sure each one of the board members probably wanted Westport to stay, but nothing about this particular inherent voting in or out closed down Westport or forced them to move. Nothing about this particular going out of the flood insurance, it might have cost them more to do business, but going out of the program in itself did not cause the Westport to leave the county. And... In light of some of the cases of appellant sites, Squawbrook v. City of DeKalb and GJZ Enterprises Inc. v. City of Troy, in regard to the equitable estoppel, what, how do you, how do you address that, those cases in regard to, I mean, they seem to be actually similar? Judge, the courts, as far as a municipal entity, they disfavor equitable estoppel in itself against the county. Disfavor? Disfavor, yes. And the court said it's because the county is moving, the county didn't make this decision on one individual piece of property. It involves the whole county. And it does not involve a specific purpose to let, you know, they didn't say, they didn't pass an ordinance that says, hey, we're making a special tax incentive district for Westport. We're doing this for Westport. We're only going to carve out this area of Westport for this special district or special flood insurance. It was a county-wide program, Your Honor. And everybody in the county advantaged of it. So, I mean, if you go to that equitable estoppel in this particular case, once a board or county legislation makes a decision, they're forever barred then from ever thinking that, hey, this is not a good idea for this county. If you take that step, the equitable estoppel, it would prevent a county board from doing any business after a certain ordinance was passed. Because if an ordinance is passed and somebody says, well, you know, this is the ordinance, this is what the county board thinks is good for the county in 2014, let's go do something. Things change. The county changes. 2015, the board changes. 2015, they make another decision and say, hey, this is not good for this county. We vote it out. Under the argument of equitable estoppel means once an ordinance is passed, the legislature's hands would be tied and they'd be barred from ever conducting any further activity in the county for that particular purpose. And I don't believe equitable estoppel, and that is why it's disfavored against municipalities in this particular case. And I think it's distinguishable. I can see the court's interpretation of equitable estoppel, and that's what some of those building permit cases talk about. Hey, judge, you want to build a new house? I'm going to give you a building permit. Board changes. Someone else gets on the board. They don't like the judge. We're going to pull the building permit. You've already spent money building your house, and now you can't finish your house. That particular thing, equitable estoppel, this is not what happened in this particular case. Yes, it's the whole county, and everybody in the whole county had the opportunity to participate in this program. Not a specific individual, not a specific farmer, not a specific automobile, not some specific home builder building a permit. And I think that's what is distinguishable, and that's why I made it about this would be a case of first impression of this court finding an action against the county on a program that they voted in under a legislature act for everybody in the county without specifically naming this that affected every piece of property in the county as compared to building permits, zonings, things of that nature. It's just like you mentioned, I think, in a question about the cave asphalt plant where they had the zoning permit and everything like that, and I notice it's kind of humorous in that thing that one of the things the court held their hat on was that the county itself bought asphalt from the plant, and then they said, well, the asphalt plant shouldn't be here. After the county for years had bought the asphalt from the plant. And so, Your Honor, I think based upon, in closing, the Tort Immunity Act, there used to be a king could do no wrong, and then they codified the Tort Immunity Act, and I think it was meant for this type of case that allows for the systematic operation of government for a county to take into consideration what is in the best interest of the county in itself to make a legislature activity, to make an ordinance, to go in and out without the fear of being sued when it involves the county as a whole and not one individual operation or business as it is in this particular case. And I think, Your Honor, based on the fact of the cases in the Tort Immunity Act, I think that Judge Hopkins made the correct decision in granting the motions to dismiss. If there's no other questions, I'll be... Thank you, Your Honor. And in closing, we ask that you affirm Judge Hopkins' dismissal of the plaintiff's submitted complaint. And thank you for your time. Thank you. Counsel. Thank you. A couple of points in response. Mr. Bly brought up the hypothetical of, well, what if they made the promises and didn't enter the NFIP? The answer is he wouldn't have rebuilt. Because the record shows he did not begin rebuilding until they entered the NFIP program. If that was the case and he had brought a suit, then we'd be talking about reliance. Did he have sufficient reliance on just their promise? It would be a whole different case. It's not what happened here. He got the promises, they entered the ordinance, and then he began the rebuilding process. So I think that hypothetical is off point. And a lot of, I would respectfully submit, of counsel's arguments are off point because the facts matter. A lot of counsel's arguments are theoretical. Well, what if the ordinance is passed and somebody else sues? But the facts of this case are the board in its entirety made promises to Mr. Yoakum. They knew his situation. They knew he needed the NFIP to get the small business loan. They knew he needed the NFIP to get affordable insurance. And they knew if they entered the NFIP, he would be able to rebuild. And they knew if they didn't, he wouldn't be able to rebuild. And then they entered the ordinance. He relied on that. He took the actions he took. Those are the facts of this case. And so that's why the arguments about we can't sue a county board for withdrawing from an ordinance just don't apply here. Because that's not what this case is. We're not suing just because they withdrew from the NFIP program. We're suing because they made these promises. They knew what the promises meant. They relied on them to our substantial detriment. And that's the facts of this case. So we are not here saying that any concerned citizen should be able to sue a legislative body for entering or not entering into, you know, certain legislation. Because that's not the facts of this case. He says that your reliance on cases such as the City of Troy case I mentioned and City of DeKalb are distinguishable because those were related to individuals and building permits. Do you cite cases that are more generally applied to the public such as the facts of this case? I mean, just because... I can't give you a specific case, but what I would say is that this case was specific because of the promises that were made. That this was specific to Westport. The board knew they were doing it for Westport and the implications it would have on Westport. Westport clearly alleged, you know, we did this because we came into the NFIP. And because you had those promises, I say because the facts matter, if this case was Mr. Yoakum just showed up to that board meeting that night and heard they entered the NFIP, I don't think he'd have a case. You know, he couldn't rely on just a generally passed statute to rebuild. I don't think that would rise to the level that we have here. It's because they made those promises with knowledge, then passed the ordinance, that there is a claim here. But you stated that he didn't spend any money until after the NFIP was passed at that board meeting. It wasn't like he started spending money and moving the place back just based on the oral representations of the board members. So isn't that exactly what you said? It's almost similar to him just showing up at that board meeting, finding out the NFIP was passed, or was going to be entered into, and then relied on that to move his business back? I would say no. One, because of the prior promises, we're doing this for you, you can get this loan, you can get this insurance. And then two, Mr. Yoakum's testimony was, in his deposition, that multiple members came up to him and said, you know, we're doing this for you. You know, and told him, we passed this for you upon the passage. So, you know, I think those things all put together makes it substantially different than just showing up and hearing, oh, I know about this NFIP program. Finally, I would say, you know, that a quasi-contract, a contract implied in law, is one in which no actual agreement between the parties occurred, but the duty is imposed to prevent injustice. That's the standard for breach of contract implied in law. We've met that standard, and that's why we respectfully submit that the dismissal should be overturned in this matter, remanded, so it can be heard on the merits. Thank you. Thank you. Could we take the matter into consideration in a tool in the due course? And recess for...